## ATTACHMENT A
## AFFIDAVIT FOR ADMINISTRATIVE INSPECTION WARRANT

The undersigned, being duly sworn, hereby deposes and says:

The affiant, Mark Bruns, a duly authorized Diversion Investigator of the United States, Drug Enforcement Administration (DEA), Department of Justice, assigned to the Minneapolis/St. Paul Office of the Omaha Division, hereby applies for an Administrative Inspection Warrant pursuant to Section 510 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P.L. 91-513), 21 U.S.C. § 880, and having been duly sworn, submits this affidavit in support of the warrant for the inspection of the controlled premises of ECONOMY DRUG INC (EDI), DEA# FC5352339:

1. EDI is located at 201 North Main St, Elgin, ND 58533. EDI is registered under the provisions of the Controlled Substances Act, 21, U.S.C. §§ 822 *et seq.*, as a retail pharmacy with privileges in handling Schedules II, IIN, III, IIIN, IV, and V controlled substances under DEA Registration No. FC5352339. This DEA registration is due to expire on August 21, 2023. EDI is registered with the State of North Dakota as a "Class-A-Out-Patient-Pharmacy" under License No. PHAR112. EDI's state license is scheduled to expire on June 30, 2023.

2. EDI's facility is a "controlled premises" within the meaning of 21 U.S.C. § 880(a) and 21 C.F.R. § 1316.02(c). Pursuant to its DEA registration, EDI is required to keep complete and accurate records of all controlled substances received, sold, delivered, or otherwise disposed of on the controlled premises, pursuant to 21 U.S.C. § 827 and 21 C.F.R. §§ 1304.01 *et seq*.

3. The affiant has examined the files and records of the DEA and has determined that EDI has not been inspected, for auditing purposes, by the DEA since becoming a DEA registrant in the year 2015.

4. In January of 2022, Special Agent (SA) Breanna Leingang of the North Dakota Bureau of Criminal Investigation (BCI) contacted investigators at the DEA Minneapolis-Saint Paul District Office regarding an investigation of the Medical Director of Jacobson Memorial Hospital Care Center (JMHCC), Dr. Alan LINDEMANN. The BCI investigation has a focus on, but is not limited to, the illegal prescribing of controlled substances.

5. On or around February 23, 2022, investigators from the BCI and Bismarck DEA conducted a search warrant at JMHCC and obtained a number of LINDEMANN patient files and other documents. While reviewing the seized documents BCI investigators became aware that multiple LINDEMANN chronic pain patients being prescribed large amounts of narcotic pain killers were also being intermittingly treated by Dr. Elizabeth SUNDBERG, who also became a focus of the investigation, also suspected of illegally prescribing controlled substances.

6. Among the patients being treated by both LINDEMANN and SUNDBERG, were patient "AB", and patient "LB." These patients were a 38 year old woman and her 58 year old mother respectively.

7. In May of 2022, SA Leingang provided your affiant with a medical expert summary of LB's JMHCC patient files during a time period from 2016-2022 wherein she was primarily treated by LINDEMANN. The summary outlines how for several years

LB repeatedly had urine exams that came back positive for drugs such as methamphetamine, PCP, and marijuana, and were repeatedly negative for medications she was being prescribed. Despite these test results, and the documentation of LINDEMANN being aware of LB's drug problem and the fact that LB shared her medications with her daughter AB, LINDEMANN continued to be prescribe her controlled substances, to include narcotic painkillers. LB also continued to receive narcotic injections and, and extra take-home narcotics during ER visits despite having received high-quantity prescriptions for these same types of medications at recent clinic visits.

8. In May of 2022, SA Leingang provided your affiant with PDMP information for AB and LB. Based on the affiants training and experience, he noted the following "red flags."

- Early refills: Patients refilling controlled substance prescriptions before their previous prescription was scheduled to run out.
- Pharmacy shopping: regularly filling prescriptions from the same time frame and provider and different pharmacies, rather than using the same pharmacy for all prescriptions. Frequently used to avoid suspicion.
- Prescribing of the "holy trinity": the regular prescribing and filling of an opioid, a benzodiazepine, and another form of central nervous system depressant, such a Gabapentin.
- High daily MME: Regular daily MME of >150
- Two family members being seen by the same physician, the same day, receiving the same or very similar medications.

9. One of the pharmacies that is listed frequently in the PDMP data of both LB and AB is EDI. It is currently unclear if EDI staff investigated any of the PDMP related red flags. It is also unclear if EDI staff contacted LB and/or AB's providers

regarding their therapeutic need for controlled substances, or questioned the high MMEs. It is unclear what due diligence or best practice policies are followed by EDI, and if such policies are followed, how they are documented. It is unclear if any of the information regarding LB and AB's drug abuse/addiction, and the sharing of their medications was made known to EDI staff. The legitimacy of many, if not all, of LB and AB's controlled substance prescriptions have been called into question, an administrative inspection of EDI by DEA investigators will be useful in determining the culpability of EDI, if any.

10. Based on the foregoing information, there exists a valid public interest in the effective enforcement of the Controlled Substance Act and its implementing regulations sufficient to justify the inspection of EDI. There is a valid public interest in establishing a full and complete accounting of all regulated equipment and controlled substances received, manufactured, distributed, dispensed, imported, exported, compounded, or otherwise disposed of by the facility.

11. The DEA's inspection of EDI will be conducted within regular business hours. The Diversion Investigator's credentials will be presented to the registrant.

12. The DEA's inspection of EDI may include the following: (a) the inspection and copying of records, reports, and other documents required to be kept or made under the CSA; (b) inspection of the controlled premises and all pertinent equipment, finished and unfinished drugs, listed chemicals, and other substances or materials, containers and labeling found therein, and all other things therein (including records, files, papers, processes, controls, and facilities) appropriate for verification of the records, reports, and

documents referred to above or otherwise bearing on the provisions of the CSA; and (c) conducting an inventory of any stock of any controlled substance or listed chemical therein and obtaining samples of such substances or chemicals.

13. If necessary and appropriate, the inspection may also include the seizure of records. If records are seized, the undersigned affiant or another DEA official authorized to execute the warrant shall provide to a pharmacy representative a copy of the warrant and a receipt for the property taken. *See* 21 U.S.C. § 880(d)(3). Any records seized pursuant to this warrant shall be copied and the originals will be returned to EDI in a timely manner. The records intended to be seized shall not impede the registrant's ability to conduct ongoing business activities.

14. The application seeks permission to inspect and copy all records required to be made and kept under the CSA, in whatever form they are found. One form in which the records might be found is data stored on a computer hard drive or other storage media. It is reasonable to believe that there is one or more computer system(s) located on the controlled premises that stores information that EDI is required to make or keep under the CSA.

15. The affiant will be accompanied by one or more Diversion Investigators and/or Special Agents who are employees of the Attorney General of the United States Department of Justice authorized to conduct administrative inspections and/or individuals who have been deputized to perform such duties under applicable law.

16. The administrative inspection will begin as soon as practicable after the issuance of the warrant. A return will be made to the Court upon the completion of the inspection, no later than ten (10) days thereafter.

17. The affiant further states that he has verified and has knowledge of the facts alleged in this affidavit and that they are true to the best of his knowledge.

> s/ *Mark Bruns*
> Mark Bruns
> Diversion Investigator
> Drug Enforcement Administration

Sworn to before me, \_\_\_\_\_ subscribed in my presence, ✓ submitted, attested to, and acknowledged by reliable electronic means.

August 15, 2022; 1133 hrs.            at      Bismarck, North Dakota
*Date and time issued*                          *City and State*

Clare Hochhalter
*Printed name and title of Judicial Officer*        *Signature of Judicial Officer*

6